UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LYNETTE PANG, et al.,

Plaintiffs,

v.

SAMSUNG ELECTRONICS AMERICA, INC.,

Defendant.

Case No. 18-cv-01882-PJH

**ORDER RE MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 59

Defendant Samsung Electronics America, Inc.'s ("Samsung") motion to compel arbitration came on for hearing before this court on February 27, 2019. Plaintiffs appeared through their counsel, Michael Woerner. Defendant appeared through its counsel, Michael McCarthy and Robert Herrington. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS IN PART and DENIES IN PART defendant's motion, for the following reasons.

**BACKGROUND**

Plaintiffs Lynette Pang, Timo Masalin, and Cindy Seminatore bring this putative false advertising and warranty class action against Samsung. Generally, plaintiffs allege that, contrary to Samsung's representations and advertising, the rear cameras on various Samsung smartphones—the Galaxy S7, Galaxy S7 Edge, Galaxy S7 Active, the Galaxy S8 and Note 8 (the "devices")—are not high quality because the lenses spontaneously shatter (the "defect"), rendering the camera all but useless. Plaintiffs' warranty claims allege that Samsung failed to honor its warranty by requiring consumers whose phone

1 exhibited the alleged defect to pay for the repair.

2 On November 20, 2018, plaintiffs filed their Second Amended Class Action Complaint (the "SAC"), which added plaintiff Cindy Seminatore as a named plaintiff. See Dkt. 53, SAC. Seminatore was added as a named plaintiff because, unlike Pang and Masalin, Seminatore did not opt out of the Samsung arbitration agreement that accompanied her phone purchase. Id. ¶ 47.

Other than that difference, Seminatore's experience was largely similar to Pang and Masalin's. On November 19, 2016, Seminatore purchased a Samsung Galaxy S7 from T-Mobile. Id. ¶ 46. On December 4, 2016, "Seminatore discovered the cover of the rear-facing camera was shattered in the shape of a circle[,]" even though "the phone had merely been charging, undisturbed on her counter." Id. ¶¶ 48-49; Dkt. 62, Cindy Seminatore Decl. ¶¶ 10-11. "Upon discovering the shattered lens cover, [ ] Seminatore immediately took the phone to T-Mobile, which refused to repair or replace the device." SAC ¶ 49; Seminatore Decl. ¶¶ 13-14. T-Mobile directed Seminatore to contact Samsung and Seminatore did so the next day, on December 5, 2016. Seminatore Decl. ¶¶ 15-16; SAC ¶ 50. During her phone call with Samsung support, "Samsung's representative informed Seminatore that the device was 'in warranty' and directed [her] to mail [her] device to a Samsung repair center in Plano, Texas," which Seminatore did. Seminatore Decl. ¶¶ 17-18; SAC ¶ 50. On January 30, 2017, however, "Samsung updated [Seminatore's] service ticket to indicate that the damage to the device was [ ] 'out of warranty.'" Seminatore Decl. ¶ 19; SAC ¶ 51. Samsung informed Seminatore that the repair fee was $182.89 and that if she did not pay that fee, Samsung would dispose of the device. Seminatore Decl. ¶¶ 20-22; SAC ¶¶ 51-52. Because Seminatore was not given an option to have the device returned unrepaired, she agreed to pay the repair fee. Seminatore Decl. ¶¶ 22-23; SAC ¶ 52.

As noted, the Galaxy S7's packaging includes the following relevant features. The middle of the second to last paragraph on the back of the box states, in tiny text that contrasts badly with the black box, "Device purchase subject to additional Samsung

2

1  Terms and Conditions." Dkt. 59-2, McBeth Ex. B. Upon opening the box, the purchaser
2  finds a textless black envelope under the device. McBeth Ex. I. Within the black
3  envelope, there are four booklets. McBeth Ex. J. The second of which is issued by
4  Samsung (as opposed to T-Mobile) and its cover states: "Health & Safety and Warranty
5  Guide" (the "Guidebook"). Id.

6  As the cover of the Guidebook indicates, the Guidebook includes health and safety
7  information, as well as information about Samsung's Limited Warranty. See generally id.
8  Ex. C. The first page of the Guidebook states "Please read this manual before operating
9  your device and keep it for future reference. This document contains important terms
10 and conditions with respect to your device. By using your device, you accept those terms
11 and conditions." Id. at ECF p. 7.[1] The next page of the Guidebook discloses that the
12 Guidebook contains a dispute resolution procedure and, in conjunction with the prior
13 sentence, indicates that use of the phone subjects the user to that dispute resolution
14 procedure (the "Arbitration Agreement"). Id. at 8. Specifically, the pages states, inter
15 alia, "**Samsung Limited Warranty** – This product is covered under the applicable
16 Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE**
17 **and your right to opt out of arbitration within 30 calendar days of the first**
18 **consumer purchase. You may opt out by either sending an email . . . or by**
19 **calling**[.]" Id. (also referring reader to the "'Dispute Resolution Procedure and Arbitration
20 and Opt-Out' section of the Limited Warranty"). The contents page, appearing on the
21 seventh page of the Guidebook, also references Samsung's Arbitration Agreement and
22 the Opt-Out policy. Id. at 13; see also id. at 32-35 (Samsung's dispute resolution
23 procedures).

24 Based on the Arbitration Agreement, Samsung now moves to compel Seminatore
25 to arbitrate all claims she asserts in this action, including warranty claims based on
26 Samsung's Limited Warranty. Plaintiffs respond only that the Arbitration Agreement is

---

[1] Henceforth, Exhibit C pin cites are to the ECF/PDF page numbers.

unenforceable as to Seminatore because she never agreed to arbitrate. Specifically, plaintiffs argue that that Seminatore never accepted Samsung's offer to arbitrate as she did not know an offer was made because Samsung's offer was inconspicuous.

**DISCUSSION**

**A.  Legal Standard**

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).

The "first principle" that underlies the U.S. Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration[.]" Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010) (quotations marks, citations, and emphasis omitted). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Id. at 297 (citations omitted).

Under the FAA, any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3–4; see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). The FAA requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985). In ruling on a motion to compel arbitration under the FAA, the district court's role is typically limited to determining whether (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement, unless that question has been delegated to the arbiter; and (iii) the agreement is valid and enforceable. Lifescan., 363 F.3d at 1012; Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 527 (2019). If the answers are yes, the court must enforce the agreement. Lifescan, 363

4

F.3d at 1012.

Here, the parties' only dispute the first question: whether the parties formed a contract. "[W]e apply ordinary state-law principles that govern the formation of contracts to decide whether an agreement to arbitrate exists." Norcia v. Samsung Telecomm. Am., LLC, 845 F.3d 1279, 1283–84 (9th Cir. 2017) (quotation marks omitted). The parties agree that California law governs the issue of contract formation.

The general rule under California law is that "silence or inaction does not constitute acceptance of an offer. . . . There are exceptions to this rule, however. An offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and fails to act in the face of the duty." Id., 845 F.3d at 1284-85; see also Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.").

"Even if there is an applicable exception to the general rule that silence does not constitute acceptance, courts have rejected the argument that an offeree's silence constitutes consent to a contract when the offeree reasonably did not know that an offer had been made." Norcia, 845 F.3d at 1285. "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 993 (Ct. App. 1972).

However, when an offer is accepted, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." Norcia, 845 F.3d at 1284 (quotation marks omitted); Windsor Mills, 25 Cal. App. 3d at 992 ("an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains").

5

**B. Analysis**

Samsung essentially raises two theories of contract formation to support its argument that Seminatore entered into a binding contract with Samsung to arbitrate her claims. First, Samsung argues that Seminatore should have known that the phone included an offer to contract because the offer was obvious. Second, Samsung argues that Seminatore invoked the warranty within 30 days of her purchase and in doing so accepted, or was on notice of, Samsung's offer, but nevertheless failed to opt out of the Arbitration Agreement.

### 1. Samsung's Offer to Arbitrate Was Not Conspicuous.

The court finds that Samsung's offer to arbitrate was not conspicuous to a reasonable consumer who purchased or used the Galaxy S7. That finding aligns with directly on point Ninth Circuit precedent and district court decisions considering nearly the exact same packaging and offer to arbitrate.

In Norcia, the Ninth Circuit confronted the question of whether the brochure in Samsung's Galaxy S4 box created a binding arbitration contract between Samsung and the consumer. 845 F.3d at 1284-90. Within the box at issue in Norcia, there was a brochure entitled "Product Safety & Warranty Brochure." Id. at 1282. That brochure was 101 pages long with two sections: (1) health and safety information and (2) Samsung's limited warranty and the user's software license agreement. Id. Within the warranty section, the brochure contained an arbitration provision that applied to all disputes arising from the limited warranty or the sale, condition, or performance of the product. Id. A subsequent paragraph explained the procedures for arbitration and stated that, without losing the benefits of the warranty, consumers could opt out of arbitration within 30 days of purchase by phone or email. Id.

The Ninth Circuit concluded that the Norcia plaintiff did not agree to arbitrate. Id. at 1291. First, the court applied the no-acceptance-by-silence rule because the plaintiff neither had a duty to act in response to the brochure nor retained the benefit of the agreement. Id. 1284-85. Second, the court found that "the Galaxy S4 box did not notify

6

1  the consumer that opening the box would be considered agreement to the terms set forth
2  in the brochure." Id. at 1287.  Third, the Ninth Circuit explained that enforcement of the
3  inside-the-box provisions—i.e., the arbitration agreement in the brochure—required the
4  consumer have adequate notice of the contractual terms.  Id. at 1289-90.  The Ninth
5  Circuit found that notice lacking because the arbitration provision appeared in a brochure
6  titled "Product Safety & Warranty Information" and "[a] reasonable person in [the
7  plaintiff's] position would not be on notice that the brochure contained a freestanding
8  obligation outside the scope of the warranty."  Id. at 1289.  "Nor would a reasonable
9  person understand that receiving the seller's warranty and failing to opt out of an
10 arbitration provision contained within the warranty constituted assent to a provision
11 requiring arbitration of all claims against the seller, including claims not involving the
12 warranty."  Id.; see also Dang v. Samsung Elecs. Co., 673 F. App'x 779 (9th Cir. 2017)
13 (similar).

14 Recent decisions in this circuit have applied Norcia to facts matching those
15 presented here.  In In re Samsung Smartphone Marketing and Sales Practices Litig., 298
16 F. Supp. 3d 1285, 1297 (N.D. Cal. 2018), a plaintiff bought an S7 that came in a box that
17 had an identical statement to the one in this case, id. ("Device purchase subject to
18 additional Samsung terms and conditions."), and included a guidebook entitled "Important
19 Information," id. Finding the guidebook "nearly identical" to the brochure at issue in
20 Norcia, In re Samsung explained: "Although opening the guidebook would have revealed
21 the language that the consumer accepts the Guidebook's terms by using the device, a
22 reasonable person had no fair notice that he should read the 'Important Information'
23 guidebook for binding terms and conditions before using the phone."  Id. at 1298-99
24 (finding plaintiff did not assent to arbitration agreement).  Other courts agree.  Velasquez-
25 Reyes v. Samsung Electrs. Am., Inc., Case No. ED CV 16-1953-DMG(KKx), 2017 WL
26 4082419, *7 (C.D. Cal. Sept. 13, 2017) ("[T]he Guide's cover page indicates only that it
27 contains health, safety, and warranty information" and thus "cannot bind [plaintiff] to an
28 arbitration provision" therein.); Samsung Elecs. Am., Inc. v. Ramirez, No.

1    117CV01462AWISAB, 2018 WL 2198721, at *10 (E.D. Cal. May 14, 2018) (because the
2    cover of the brochure merely "indicate[d] that it contains safety information and the
3    seller's warranty, . . . a reasonable person would not be on notice that the brochure
4    contained a freestanding obligation outside the scope of the warranty.").

With respect to whether Seminatore had notice of the offer to arbitrate based only upon the device's packaging and the inclusion of the Guidebook, the court finds the above courts' analysis persuasive and, in the case of Norcia, binding.

### 2. A Reasonable Consumer Who Invokes The Limited Warranty Would Be On Notice Of The Offer to Arbitrate

All that said, the present facts are distinct from the above decisions in one important way: Seminatore invoked Samsung's Limited Warranty within the Arbitration Agreement's 30-day opt-out period. That fact, and her continued attempts to enforce that warranty in this action, puts this case outside the purview of Norcia. In fact, the Ninth Circuit emphasized that its decision might be different if the action involved a warranty dispute. Norcia, 845 F.3d at 1284, 1288 n.3 ("Samsung may be able to require Norcia to arbitrate claims arising out of the Standard Limited Warranty . . . but we need not consider the enforceability of any such limitation because Norcia has not brought any warranty claims against Samsung.").[2]

Under the facts present here, the relevant question is whether a reasonable person in Seminatore's position—i.e., one who invoked the warranty within 30-days of purchase—would be on notice of Samsung's offer to arbitrate. Seminatore's invocation of Samsung's Limited Warranty makes this case meaningfully dissimilar to the decisions discussed above that essentially held that those plaintiffs had no reason to open the guidebooks accompanying their devices.[3] Contrary to those cases, here, Seminatore

---

[2] No party has requested that the court compel arbitration of only Seminatore's warranty claims. Nor have plaintiffs asked the court to keep Seminatore's non-warranty claims.

[3] The court notes that Samsung's Arbitration Agreement's opt-out period begins to run on the date of "the first consumer purchase." Ex. C. at 8 (emphasis added). While the circumstances present here give the court no cause to reach the issue, the court notes

8

"had [ ] fair notice that [s]he should read" the Guidebook entitled "Health & Safety and Warranty Guide," In re Samsung, 298 F. Supp. 3d at 1297, because she intended on making a warranty claim. A reasonable person in that position would have opened the Guidebook because the cover page indicates that the Guidebook contains information about that topic. "[O]pening the guidebook would have [immediately] revealed the language that the consumer accepts the Guidebook's terms by using the device[.]" Id. at 1298; Ex. C. at 7. And the next page would have informed Seminatore that the Limited Warranty included an arbitration agreement with an opt-out period. Ex. C at 8. The Guidebook's contents page would have informed Seminatore of the same. Id. at 13.[4]

Further, Samsung's Arbitration Agreement is part of Samsung's Limited Warranty: "This product is covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE**[.]" Ex. C. at 8 (emphasis added); see also id. (referring reader to the "'Dispute Resolution Procedure and Arbitration and Opt-Out' section of the Limited Warranty"). That suggests either that arbitration is a condition of enforcing the Limited Warranty, see Norcia, 845 F.3d at 1288 ("A condition" of enforcing a warranty "is not equivalent to a freestanding obligation that limits a buyer's rights outside of the scope of warranty itself."), or that the Limited Warranty is a term of a single contract that includes an arbitration agreement, id. at 1284-85 ("[a] party who is bound by a contract is bound by all its terms . . .; "An offeree's silence may also be treated as consent to a contract when the party retains the benefit offered"). See also Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.").

---

that in certain circumstances that opt-out period may expire before a consumer receives fair notice of the existence of the arbitration agreement. That circumstance strikes this court has highly inequitable.

[4] It is of no import that Seminatore attests she did not in fact read the Guidebook until nearly two months later. See Seminatore Decl. ¶ 25. A reasonable person would have done so and, in doing so, would have been put on notice of the Arbitration Agreement.

9

Lastly, the present situation does not clearly fall under the general rule that "silence or inaction does not constitute acceptance of an offer." Norcia, 845 F.3d at 1284-85. That is because Seminatore acted by invoking Samsung's Limited Warranty. In California, "mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding." Reigelsperger v. Siller, 40 Cal. 4th 574, 579–80 (2007). Invocation of a Limited Warranty that includes an arbitration agreement might reasonably be understood as acceptance of the offer.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration is GRANTED and Seminatore is hereby COMPELLED TO ARBITRATE all claims she asserts in this action. The court STAYS the action only with respect to Seminatore's claims. See 9 U.S.C. § 3. Defendants' request for a stay of the entire action pending the resolution of Seminatore's arbitration is DENIED. See Congdon v. Uber Techs., Inc., 226 F. Supp. 3d 983, 990-91 (N.D. Cal. 2016) (explaining why opt-out plaintiffs' litigation should not be stayed pending resolution of another plaintiff's arbitration).

**IT IS SO ORDERED.**

Dated: March 4, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge